UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELLRITA THOMAS, | ) |
| | ) Case No. 11-cv-6948 |
| Plaintiff, | ) |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| | ) |
| CEDA | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Dellrita Thomas ("Thomas"), filed a pro se, three-count complaint alleging discrimination based on her race and disability pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981 ("§1981"), and the Americans with Disabilities Act ("ADA"), against her prior employer, Community and Economic Development of Cook County ("CEDA"). CEDA moves for summary judgment [33], arguing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. For the reasons set forth below, CEDA's motion for summary judgment is granted.

**Background**

The following facts are undisputed. Thomas, an African American woman, began working for CEDA in February of 2001, a social services agency that provides family/child social services in the Cook County area. Thomas first held the position of Teacher's Assistant in CEDA's Head Start program until she was transferred to the position of Lead Teacher from August 2002 until December 2002, to cover another employee's leave of absence. In December 2002, Thomas was transferred back to the Teacher's Assistant position in the Head Start program and remained in that position through the end of the 2002 - 2003 school year. In August 2003,

CEDA transferred Thomas out of the Head Start program and into the Preschool program where she remained until her termination in 2005.

Thomas claims to have become disabled as a result of a fall in a CEDA classroom, severely injuring her right knee. She immediately reported her injury to her supervisor, Mary Lee Doden, whom she claims refused to write up her injury report; instead, instructing her to write up her own. Thomas took a medical leave of absence from December 2003 until February 2004. Although cleared to return to work with a light duty restriction, Thomas' restrictions prevented her from standing more than fifteen minutes at a time, and also limited her ability to walk and bend over. Thomas claims upon her return, she was met with harassment, discrimination, and retaliation from Doden due to her disability.

Thomas alleges her complaints to Doden about her harassing, discriminatory, and retaliatory behavior went unanswered. Thomas then began to voice her complaints by calling, writing, and faxing Doden's supervisor on an almost weekly basis. Thomas also complained to Unita Sims, CEDA's Vice President of Child Services, through a series of letters she submitted on March 30, 2005. Despite her complaints, Thomas alleges Doden's mistreatment of her continued.

In July 2005, Thomas learned that due to low enrollment and funding cuts, fifteen CEDA employees who worked in CEDA's Head Start Program were selected for inclusion in a reduction in force ("RIF"), including Thomas. Thomas was informed that her selection in the RIF was unrelated to her job performance. Thomas stated that she had no reason to doubt that CEDA indeed had experienced a reduction in funding, as Unita Sims had related such to her. Thomas was offered the opportunity to apply for vacant positions within CEDA, which were not

subject to budget cuts, but she declined as they were located outside of Oak Park and not related to teaching. In 2011, CEDA closed its entire Oak Park facility.

Thomas argues that at the time of the RIF she was no longer in the Head Start program, thus, she should not have been included in the lay-offs. Moreover, she contends that enrollment was not low and that other non-African American and non-disabled employees in the Head Start program were not included in the RIF.

After filing pro se, the Court appointed Thomas counsel. On October 7, 2013, the Court granted defendant's motion to dismiss defendant Salazar, the Director of Human Resources for CEDA, as plaintiff admitted that her lawsuit was only intended to be pursued against CEDA, and that she has no basis to believe that Salazar personally subjected her to discrimination. Shortly thereafter, the remaining defendant CEDA filed its motion for summary judgment. For the following reasons, CEDA's motion is granted.

**Legal Standard**

A party is entitled to summary judgment if the evidence shows that there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the Court construes all reasonable inferences and resolves all evidentiary conflicts in the light most favorable to Thomas, the non-moving party. *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012). At this stage, the Court may not weigh the evidence or engage in fact-finding, instead, the Court is simply to determine whether there is a genuine issue for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine

issue of material fact that requires a trial to resolve. Fed.R.Civ.P. 56(e); *Celotex v. Carteret,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**Discussion**

Thomas' three-count employment discrimination action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981 ("§1981"), and the Americans with Disabilities Act ("ADA"). CEDA moves for summary judgment arguing that Thomas cannot establish a *prima facie* case of discrimination based on race or disability, because she fails to meet either the direct or indirect method tests, and even if she could establish the necessary proof under either standard, she cannot ultimately show that CEDA's proffered reason for her termination was pretextual. Additionally, CEDA argues Thomas cannot prove her claims of a hostile work environment or retaliation.

*I. Racial Discrimination*

To survive summary judgment on her Title VII race discrimination claim, Thomas must produce either direct or indirect evidence that creates a triable issue on whether discrimination motivated her termination. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). CEDA argues that Thomas has no direct evidence that her lay-off was triggered by discriminatory animus. The Court agrees. This type of evidence is not common and usually constitutes something similar to an "explicit admission by the employer that a particular decision was motivated by discrimination." *Diaz*, 653 F.3d at 587. Accordingly, the Court looks to the indirect method of proof.

To succeed under the indirect method, Thomas must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thomas must prove that she: (1) is a member of a protected class; (2) was meeting her employer's legitimate

employment expectations; (3) suffered an adverse employment action; and (4) was treated differently than other similarly situated employees who are not members of her protected class. *Palucki v. Gooding Rubber Co.,* 221 F.3d 1003, 1012 (7th Cir. 2000). However, summary judgment is appropriate in favor of CEDA if Thomas cannot demonstrate any one element of the *prima facie* case. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

If Thomas establishes a *prima facie* case of discrimination, the burden then shifts to CEDA to articulate a legitimate, non-discriminatory reason for her termination. *McDonnell Douglas,* 411 U.S. at 802. To satisfy this burden, CEDA need not show that it has a "good reason" for its decision to terminate Thomas, but only that it was not motivated by discriminatory animus towards her race and/or alleged disability status. *Coleman,* 667 F.3d at 852. If CEDA meets this burden of production, Thomas must then establish that there is an issue of material fact as to whether CEDA's "proffered reasons are merely pretext for unlawful discrimination or retaliation, in order to survive summary judgment." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004).

CEDA does not dispute that by virtue of Thomas being African American and laid-off for reasons unrelated to her job performance, she has already satisfied all but the fourth element of her *prima facie* claim of race discrimination. However, CEDA argues Thomas cannot prove that other similarly situated employees who are not members of her protected class were treated more favorably than her.

It is Thomas' burden to identify another employee who is similarly situated to her, but unlike Thomas, was not terminated. *Nichols V. Southern Ill. University-Edwardsville,* 510 F.3d 772, 785 (7th Cir. 2007). A plaintiff cannot defeat summary judgment by pointing to a co-worker who was treated more favorably; she must identify someone treated more favorably than her who

5

is directly similar to her in all material respects. *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 619 (7th Cir. 2000). Otherwise, the Court has no basis for comparison to determine whether the resulting difference in treatment was due to discrimination. *Id.*

Thomas directs the Court to one woman, Zahida Bhatti, arguing Bhatti was treated more favorably although similarly situated to her. However, Bhatti did not hold the same position as Thomas. Bhatti was a Lead Teacher for Head Start, rather than a Teacher's Assistant like Thomas. Thomas acknowledges that their titles are different, but implores the Court to take a common-sense approach that the title and role need not be identical. Thomas asserts that she held many similar duties, as well as Bhatti's actual job/title for approximately three months while Bhatti was on a leave of absence. Holding the same position temporarily – for only three months over three years prior to her date of termination - does not rise to the level of "substantial similarity". *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir.2007). Accordingly, the Court finds that Thomas has failed to establish a *prima facie* case of racial discrimination.

CEDA argues that the Court need not address the issue of pretext as Thomas has failed to establish a *prima facie* case of discrimination under *McDonnell Douglas.* Although the Court is not required to move to the next step of pretext since Thomas failed to establish a *prima facie* case under *McDonnell Douglas*, the Court notes that the evidence Thomas presents does not create a genuine issue of fact that CEDA's reason for terminating Thomas was pretextual. *Hague v. Thompson Distrib.Co.,* 436 F.3d 816, 823 (7th Cir. 2006).

If CEDA can meet the burden of providing a non-discriminatory reason for Thomas' lay-off, then the burden shifts to Thomas to prove that the reason submitted was pretextual. Put plainly, Thomas must demonstrate that CEDA's proffered non-discriminatory rationale for her termination - implementation of a RIF due to funding cuts - completely lacks a factual basis, and,

instead, CEDA did so because she is African-American. *See Ghosh v. Indiana Dept. of Environmental Management,* 192 F.3d 192 F.3d 1087, 1092 (7th Cir. 1999).

Thomas argues that CEDA provides no explanation as to why she was specifically included in the fifteen-person RIF when she was not in the Head Start program at the time. Additionally, Thomas asserts that despite CEDA's claim to have had low enrollment, its newsletter declared full enrollment. Regardless, "it is 'not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.'" *Ineichen v. Ameritech,* 410 F.3d 956, 961 (7th Cir. 2005) (quoting *Ransom v. CSC Consulting, Inc.,* 217 F.3d 467, 471 (7th Cir. 2000).

The Court finds Thomas' arguments unpersuasive because she admits that she has no personal knowledge about the RIF and that she has no reason to doubt that CEDA's funding sources were reduced. Moreover, it is undisputed that CEDA gave Thomas the opportunity to apply for other positions within CEDA, which were not subject to funding cuts, but Thomas declined to apply because they were too far from her Oak Park residence and she lacked transportation. Therefore, Thomas has failed to provide the Court with specific facts that call into question the veracity of CEDA's proffered nondiscriminatory explanation.

*II. Disability Discrimination*

Because the direct and indirect method of proof is the same for proving racial and disability based discrimination, Thomas also fails to establish a *prima facie* case of discrimination based on disability. *See Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012). CEDA argues that Thomas' ADA discrimination/retaliation claim fails because she is not "disabled" within the meaning of the ADA, and therefore cannot meet either the first of fourth

element. The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Here, it is undisputed that after her June 2005 layoff, Thomas continued to be gainfully employed in a teaching capacity for eight consecutive years with the Oak Park Elementary School District. Because the major life activity of "working" is at issue, Thomas must be able to show that she is significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with similar training, skills and abilities. *Powers v. US.F. Holland, Inc.,* 667 F.3d 815, 820 (7th Cir. 2011). The Court finds her ability to maintain gainful employment in a teaching capacity for such a significant amount of time to mean that she is not "disabled" as defined by the ADA. *Powers,* 667 F.3d at 820.

Thomas' only rebuttal to CEDA's contention that she is not disabled under the ADA is the conclusory statement: "CEDA is wrong. Thomas was disabled." (Resp. at p.14). Thomas then launches into argument, for the first time, that her condition meets the disability requirements under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") because it substantially limits her daily life activities of walking, standing and bending. The Court is not required to address this claim, as Thomas failed to plead it in her complaint. However, since CEDA addresses the ADAAA argument, this Court will provide a brief analysis.

The ADAAA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of the individual." 42 U.S.C. § 12102(1). Thomas relies on *Sickels v. Central Nine Career Center*, 2012 WL 266945, at *7 (S.D. Ind. Jan. 30, 2012) to support her argument that the ADAAA broadly construes the term "substantially limits." Thomas' reliance on *Sickels* is misplaced. Sickels suffered from a substantial limitation resulting

from a severe stroke and heart condition, which this Court finds distinguishable from Thomas' knee injury. Nevertheless, this Court finds that a genuine issue of fact exists regarding Thomas' knee injury *substantially* limiting her daily life and meeting the disability requirements of the ADAAA. Thomas' testimony provides some evidence that she was limited in her daily life activities of walking, standing and bending due to her knee injury and resulting light duty restriction.

Regardless of Thomas establishing the first element of being disabled under the ADA or the ADAA, she must establish all elements of a *prima facie* case of discrimination to survive summary judgment. Thomas' disability claim fails for the same reasons as her racial discrimination claim; lack of adequate comparators and no evidence that CEDA's reason for her termination was pretextual.

*III. Hostile Work Environment*

To survive summary judgment on a hostile work environment claim, Thomas must establish each of the following: (1) the harassment was based on her disability status and/or race; (2) the harassment was objectively and subjectively offensive; (3) the harassment was severe and pervasive; and (4) there is a basis for employer liability. *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 544 (7th Cir. 2011). "[A hostile work] environment must be 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Smith v. Northeastern Ill. Univ.,* 388 F.3d, 559, 567 (7th Cir. 2004) (citing *Cerros v. Steel Technologies, Inc.,* 288 F.3d 1040, 1045 (7th Cir. 2002). CEDA argues that Thomas cannot satisfy any elements of a *prima facie* claim for a hostile work environment.

First, CEDA asserts that although Thomas complained of Doden allegedly "nit-picking" her about how she performed functions of her job, no facts are presented to show Doden's "nit-

picking" was motivated by Thomas' knee injury or her race, apart from speculation. This Court agrees. Speculation cannot defeat summary judgment. *See Hedberg v. Ind Bell Tel. Co.,* 47 F.3d 928, 932 (7th Cir. 1995).

Second, CEDA contends there is nothing objectively offensive about requesting that an employee perform their job in the manner in which the employer desires. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270-71 (2001). It is undisputed that Doden ordered Thomas to do things which were actually required by her job description, such as clean the classroom, stand up, and interact with the children. Thomas argues that Doden's mean tone and constant checking up on her about how she was doing her job created a hostile environment. However, as the Seventh Circuit has stated, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Business Services, Inc.,* 336 F.3d 520, 532 (7th Cir. 2011).

Lastly, CEDA argues that the alleged harassment, if it occurred, was not severe. The Court agrees. Only a "hellish" workplace is actionable as a hostile work environment. *Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir. 2003). Nothing in the record suggests that Doden' manner of supervision rose to an actionable level of hostility. Accordingly, the Court finds there is no genuine issue of material fact regarding Thomas' hostile work environment claim.

*IV. Retaliation*

Retaliation claims employ a similar analytical framework as discrimination claims. In order to prevail on her retaliation claim under the direct method, Thomas must show: (1) she engaged in activity statutorily protected by Title VII, §1981 and/or the ADA; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Burks v. Wisconsin De't of Transp.,* 464 F.3d 744, 758 (7th Cir. 2006). Under the indirect method, Thomas "must

show that she (1) engaged in statutorily protected expression, (2) met the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected expression." *Kodl v. Bd. of Ed. School Dist. 45, Villa Park,* 490 F.3d 558, 562 (7th Cir. 2007). If Thomas can establish a *prima facie* case, then CEDA "must offer a legitimate nondiscriminatory explanation for the decision to discharge [her]. The burden of production then returns to [Thomas] to show that [the] articulated reason for [Thomas'] discharge is pretextual." *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 635 (7th Cir. 2011). Because the Court has already found that Thomas fails to satisfy at least one of the elements in both the direct and indirect method, and there is no evidence of pretext presented, the Court declines to further consider this claim. Accordingly, there is no genuine issue of material fact on Thomas' retaliation claim and CEDA is entitled to judgment as a matter of law.

**Conclusion**

For the reasons stated herein, the undisputed facts demonstrate that no genuine material issue of fact exists and CEDA is entitled to judgment as a matter of law. This Court grants the motion for summary judgment.

IT IS SO ORDERED.

Date: July 9th, 2014

Entered